ORDERED.

**Dated:  July 02, 2015**

Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                                      Case No. 3:11-bk-5348-JAF

MONTAGUE KENNETH MCMILLAN            Chapter 13
and TERRIE LYNN MCMILLAN,

      Debtors.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    This case came before the Court upon Motion for Approval of Settlement (Doc. 53) and

Trustee's Objection to Motion for Approval of Settlement (Doc. 54).  On May 4, 2015, the Court

entered Findings of Fact and Conclusions of Law in which it determined that the proceeds from

the sale of Mr. McMillan's ownership interest in a collision repair center were property of

Debtors' bankruptcy estate.  The remaining issue is whether the proceeds are disposable income.

On June 4, 2015, the Court conducted an evidentiary hearing to make that determination.  The

Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

On July 21, 2011, Debtors filed this bankruptcy petition.  On October 28, 2011, the Court confirmed Debtors' Chapter 13 Plan, which provided for payments of $555.56 in months 1-5 of the Plan and payments of $499.09 in months 5-60 of the Plan.  On September 24, 2012, Debtors' Plan was modified to provide for payments of $555.56 in months 1-5 of the Plan, payments of $499.09 in months 5-53 of the Plan, and payments of $578.46 in months 54-60 of the Plan. The main purpose of Debtors' Chapter 13 filing was to pay a $21,628.69 priority debt to the IRS. Unsecured creditors are to receive a total of $3,524.00, approximately 3.5% of what is owed to them, pursuant to Debtors' Modified Plan.

Mr. McMillan was unemployed from March of 2014 until August of 2014.  From approximately August of 2014 until April of 2015, Mr. McMillan was employed by an automobile dealership where he earned an annual salary of $60,000.00 to $65,000.00.  Mr. McMillan lost his job in April of 2015 and is currently unemployed although he has a "good" prospect to obtain employment with Auto Nation in Sanford, Florida.

Mrs. McMillan was unemployed from March of 2014 until September 2014.  Since September 5, 2014, Mrs. McMillan has been employed by an automobile dealership where she earns $11.00 hourly.  Debtors' monthly income is $2,401.67.

Debtors' total income in 2014 was $117,896.00, consisting of $37,961.00 in wages, $72,280.00 in IRA distributions, $2,133.00 from pensions, $3,839.00 from business income, and $1,776.00 in unemployment compensation.

Debtors have not made a mortgage payment since May of 2009.  At the time of their bankruptcy filing, Debtors intended to surrender their home.  Thereafter, Debtors attempted to short sale their home but again changed their minds.  Debtors have since applied for a loan

modification and obtained a trial modification.  Despite not having made a mortgage payment in six years, Debtors agreed as part of the trial modification to pay $2,500.00 a month, approximately $100.00 more per month than their household income, beginning July 1, 2015.  If Debtors do not follow through with the trial modification and the bank forecloses on the property, Debtors will have to find another place to live.  Although Debtors' mortgagee obtained relief from the automatic stay on March 29, 2013, there is no evidence before the Court as to whether Debtors' mortgagee has instituted a foreclosure proceeding.

Mr. McMillan drives a 1993 Toyota van with 300,000 miles on it.  Mrs. McMillan drives a 1998 Lexus with 170,000 miles on it.  Both of Debtors' vehicles need new tires.  Additionally, Debtors owe $2,500.00 to the Internal Revenue Service for their 2014 federal income taxes.

Debtors have two children, a 20 year old daughter and an 18 year old son.  Debtors' daughter will be a junior in college in the fall and Debtors' son will be a freshman in college in the fall.  Mrs. McMillan testified that while Debtors' children have some scholarships, Debtors do not know how much financial aid their children will receive.  Mrs. McMillan believes that she and her husband will have to help their children with out of pocket expenses.  Debtors paid $560.00 for their daughter's rent on June 1.  Debtors also pay the car insurance on their children's vehicles.

On May 26, 2015, Debtors filed an Amended Schedule I and J which indicate negative monthly net income of $1,231.43.  Debtors' Amended Schedule J does not include any of their children's college expenses.

The Trustee submitted into evidence a proposed Form B22C which he asserts evidences a monthly disposable income of $1,107.02 for Debtors.  However, that calculation assumes a current monthly income of $9,684.18 and total deductions under § 707(b)(2) of $8,577.16.  The

current monthly income of $9,684.18 is based upon monthly IRA income of $4,039.21.   But,

Mrs. McMillan's testimony established that Debtors' monthly income is $2,401.67.   There is no

evidence before the Court that Debtors are currently withdrawing money from their IRAs.

Moreover, Debtors have only $12,000.00 remaining in their IRAs.   Withdrawals of $4,000.00

monthly will exhaust the balance in three months.   The Court finds that Debtors' monthly

income is $2,401.67.   As for the expense component, the Trustee's proposed Form B22C

includes additional taxes to account for the IRA withdrawals as well as an unexplained expense

of $1,802.39 for a payment on a prepetition priority claim.   The Court finds that the total of all

deductions allowed under § 707(b)(2) is $6,277.97 rather than $8,577.16.   Accordingly, Debtors

have a negative monthly income ranging from $1,231.43 (based upon their Amended Schedule I

and J) to $3,876.30 (based upon the income on their Amended Schedule I and the expenses

allowed under § 707(b)(2)).

After the payment of attorney's fees, the remaining settlement proceeds will be

$13,000.00.

## Conclusions of Law

Disposable income is "current monthly income received by the debtor … less amounts

reasonably necessary to be expended … for the maintenance or support of the debtor or a

dependent of the debtor."  11 U.S.C. § 1325(b)(2).  Debtors argue that none of the net settlement

proceeds should be considered disposable income.  Debtors indicate that if they are permitted to

retain the proceeds, they will use them for reasonable and necessary expenses.  Debtors contend

that if they do not receive the proceeds, their future is bleak because they have nowhere to go.

The Court is faced with an usual situation in that Debtors do not have an immediate need for the

entirety of the proceeds.   Even taking into account Debtors' stated monthly shortfall of

$1,231.43, Debtors' approximate $500.00 plan payment, Debtors' $2,500.00 obligation to the

IRS, and an allowance of $1,200.00 for tires on Debtors' vehicles, Debtors would be left with

approximately $7,500.00 if the Court awards them the net proceeds.  Rather, Debtors seek to

have the Court permit them to set aside the remainder of the proceeds until they are exhausted by

Debtors' living expenses, including the support of their children.  The Court does not question

Debtors' efforts or good faith.  However, the Court finds that $7,500.00 of the proceeds are

disposable income which must be paid to Debtors' unsecured creditors.  The Court will enter a

separate order consistent with these Findings of Fact and Conclusions of Law.